FILED

2012 AUG 31  PM 3: 05

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

1   **BURSOR & FISHER, P.A.**
    L. Timothy Fisher (State Bar No. 191626)
2   Sarah N. Westcot (State Bar No. 264916)
    1990 North California Boulevard, Suite 940
3   Walnut Creek, CA  94596
    Telephone: (925) 300-4455
4   Facsimile:  (925) 407-2700
    E-Mail: ltfisher@bursor.com
5          swestcot@bursor.com

6   **BURSOR & FISHER, P.A.**
    Scott A. Bursor (State Bar No. 276006)
7   369 Lexington Avenue, 10th Floor
    New York, NY  10017
8   Telephone: (212) 989-9113
    Facsimile:  (212) 989-9163
9   E-Mail: scott@bursor.com

FAX FILING

10  *Attorneys for Plaintiffs*

11

12              UNITED STATES DISTRICT COURT

13              CENTRAL DISTRICT OF CALIFORNIA

14

15  STEVEN BAILEY, ROBERT SANDERS,        SACV12-1438-PA (AGR)
    VICKI FLEISIG, JAYME KACZMAREK, and
16  CYNTHIA LONG, individually and on behalf of   **CLASS ACTION COMPLAINT**
    all others similarly situated,
17                                        **JURY TRIAL DEMANDED**
                         Plaintiffs,
18
           v.
19
    THE DANNON COMPANY, INC.,
20
                         Defendant.
21

22

23

24

25

26

27

28

    CLASS ACTION COMPLAINT

Plaintiffs Steven Bailey, Robert Sanders, Vicki Fleisig, Jayme Kaczmarek, and Cynthia Long (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant The Dannon Company, Inc. ("Dannon").  Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      This is a class action lawsuit on behalf of purchasers of Dannon Activia, Activia Light, Activia Parfait, Activia Fiber, and Activia 24 oz. Tubs (collectively, "Activia").  Each of these products is labeled and marketed as "YOGURT," "LOWFAT YOGURT," or "NONFAT YOGURT."  However, each of these products contains filler materials, such as water, corn starch, and Milk Protein Concentrate ("MPC").  The U.S. Food and Drug Administration ("FDA") has prohibited the use of filler materials in yogurt.  Because Activia contains these banned additives, as a matter of federal law it is <u>not</u> yogurt.  It is a misbranded product, and it cannot legally be sold in the United States.

2.      Even worse, MPCs are not Generally Recognized As Safe by the FDA, nor do they appear in the FDA's larger list of food additives, Everything Added to Food in the United States ("EAFUS").  In fact, the FDA has specifically banned MPCs from use as ingredients in yogurt.  Because Activia contains MPCs, it is an adulterated product.

3.      Yogurt is created by fermenting milk with food-grade bacteria.  During fermentation, the milk thickens and acidifies, giving yogurt its texture and tart flavor.  It takes one gallon of milk to produce a gallon of regular yogurt.  One cup of yogurt is one cup of fermented milk.

4.      But Activia is different, because it is not made the way yogurt is supposed to be made.  Unlike other brands, Dannon adds water and fillers to Activia in order to make a cheaper product.  These filler materials include food starch, corn starch, acacia gum, xanthan gum, gelatin, inulin, and MPCs.  The result is a product that appears to be yogurt, but in fact is not yogurt at all.

5.      Just as the mineral pyrite resembles gold, Activia resembles yogurt.  But fool's gold is not gold.  And Activia is not yogurt.

6.      Nevertheless, Dannon sells Activia as authentic yogurt.  Doing so enables it to charge a substantial price premium.  Just as real gold commands a price premium over fool's gold, authentic yogurt commands a higher price in the marketplace than imitation dairy products.  In fact, the price premium for Activia is even larger, because Activia has no value whatsoever.  The product is misbranded and adulterated, and it cannot legally be sold at any price.  It is worthless.

7.      Plaintiffs are purchasers of Activia who thought they were buying authentic yogurt.  They had no idea that they were sold an illegal and adulterated product that was not, in fact, yogurt.  Plaintiffs assert claims on behalf of themselves and a nationwide class of purchasers of Activia, for breach of express warranty, breach of the implied warranty of merchantability, breach of the implied warranty of fitness for a particular purpose, unjust enrichment, violation of the California Consumer Legal Remedies Act ("CLRA"), violation of the California Unfair Competition Law ("UCL"), violation of the California False Advertising Law ("FAL"), violation of the New Jersey Consumer Fraud Act ("NJCFA"), violation of the Florida Deceptive Trade Practices Act ("FDUTPA"), negligent misrepresentation, and fraud.

## PARTIES

8.      Plaintiff Steven Bailey is a citizen of California who resides in Lake Forest, California.  Plaintiff Bailey purchased Activia Light Blueberry around April 2012.  Activia's label identifies the product as "NONFAT YOGURT" on the front of each package.  Plaintiff Bailey read and understood these representations and believed he was purchasing (i) yogurt, (ii) that was not misbranded, (iii) that was not adulterated, and (iv) that was legal for sale in the United States.  Plaintiff Bailey relied on these representations and warranties in deciding whether to purchase Activia, and these representations and warranties were part of the basis of the bargain, in that he would not have purchased Activia if he had known that any of these representations were false.  Plaintiff Bailey also understood that in making the sale, the retailer was acting with the knowledge and approval of Dannon and/or as the agent of Dannon.  He understood that the purchase involved

a direct transaction between himself and Dannon, because Activia's packaging contains promises and representations by Dannon regarding the nature and quality of the product.  Plaintiff Bailey purchased a misbranded and adulterated product that is not legal to sell in the United States.  He also paid a price premium due to Activia's purported status as a yogurt product.  The amount of the price premium can be reasonably quantified by an appropriate market study of the prices for comparable dairy products, or through a contingent valuation study, or through other means regularly employed by economic and valuation experts.

9.     Plaintiff Robert Sanders is a citizen of California who resides in Torrance, California.  Plaintiff Sanders is a purchaser of Activia.  Activia's label identifies the product as "LOWFAT YOGURT" on the front of each package.  Plaintiff Sanders read and understood these representations and believed he was purchasing (i) yogurt, (ii) that was not misbranded, (iii) that was not adulterated, and (iv) that was legal for sale in the United States.  Plaintiff Sanders relied on these representations and warranties in deciding whether to purchase Activia, and these representations and warranties were part of the basis of the bargain, in that he would not have purchased Activia if he had known that any of these representations were false.  Plaintiff Sanders also understood that in making the sale, the retailer was acting with the knowledge and approval of Dannon and/or as the agent of Dannon.  He understood that the purchase involved a direct transaction between himself and Dannon, because Activia's packaging contains promises and representations by Dannon regarding the nature and quality of the product.  Plaintiff Sanders purchased a misbranded and adulterated product that is not legal to sell in the United States.  He also paid a price premium due to Activia's purported status as a yogurt product.  The amount of the price premium can be reasonably quantified by an appropriate market study of the prices for comparable dairy products, or through a contingent valuation study, or through other means regularly employed by economic and valuation experts.

10.     Plaintiff Vicki Fleisig is a citizen of California who resides in Yorba Linda, California.  Plaintiff Fleisig purchased Activia from an Albertson's supermarket in Yorba Linda, California in 2012.  Activia's label identifies the product as "LOWFAT YOGURT" on the front of

each package.  Plaintiff Fleisig read and understood these representations and believed she was purchasing (i) yogurt, (ii) that was not misbranded, (iii) that was not adulterated, and (iv) that was legal for sale in the United States.  Plaintiff Fleisig relied on these representations and warranties in deciding whether to purchase Activia, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased Activia if she had known that any of these representations were false.  Plaintiff Fleisig also understood that in making the sale, the retailer was acting with the knowledge and approval of Dannon and/or as the agent of Dannon. She understood that the purchase involved a direct transaction between herself and Dannon, because Activia's packaging contains promises and representations by Dannon regarding the nature and quality of the product.  Plaintiff Fleisig purchased a misbranded and adulterated product that is not legal to sell in the United States.  She also paid a price premium due to Activia's purported status as a yogurt product.  The amount of the price premium can be reasonably quantified by an appropriate market study of the prices for comparable dairy products, or through a contingent valuation study, or through other means regularly employed by economic and valuation experts.

11.     Plaintiff Jayme Kaczmarek is a citizen of New Jersey who resides in Rutherford, New Jersey.  Plaintiff Kaczmarek is a purchaser of Activia.  Activia's label identifies the product as "LOWFAT YOGURT" on the front of each package.  Plaintiff Kaczmarek read and understood these representations and believed she was purchasing (i) yogurt, (ii) that was not misbranded, (iii) that was not adulterated, and (iv) that was legal for sale in the United States.  Plaintiff Kaczmarek relied on these representations and warranties in deciding whether to purchase Activia, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased Activia if she had known that any of these representations were false.  Plaintiff Kaczmarek also understood that in making the sale, the retailer was acting with the knowledge and approval of Dannon and/or as the agent of Dannon.  She understood that the purchase involved a direct transaction between herself and Dannon, because Activia's packaging contains promises and representations by Dannon regarding the nature and quality of the product.  Plaintiff Kaczmarek purchased a misbranded and adulterated product that is not legal to sell in the United States.  She

also paid a price premium due to Activia's purported status as a yogurt product.  The amount of the price premium can be reasonably quantified by an appropriate market study of the prices for comparable dairy products, or through a contingent valuation study, or through other means regularly employed by economic and valuation experts.

12.     Plaintiff Cynthia Long is a citizen of Florida who resides in Tamarac, Florida. Plaintiff Long purchased Activia Light Blueberry, Activia Light Raspberry, and Activia Light Strawberry from a Publix supermarket in Sunrise, Florida in 2012.  Plaintiff Long paid exactly $2.00 per package.  Activia's label identifies the product as "NONFAT YOGURT" on the front of each package.  Plaintiff Long read and understood these representations and believed she was purchasing (i) yogurt, (ii) that was not misbranded, (iii) that was not adulterated, and (iv) that was legal for sale in the United States.  Plaintiff Long relied on these representations and warranties in deciding whether to purchase Activia, and these representations and warranties were part of the basis of the bargain, in that she would not have purchased Activia if she had known that any of these representations were false.  Plaintiff Long also understood that in making the sale, the retailer was acting with the knowledge and approval of Dannon and/or as the agent of Dannon.  She understood that the purchase involved a direct transaction between herself and Dannon, because Activia's packaging contains promises and representations by Dannon regarding the nature and quality of the product.  Plaintiff Long purchased a misbranded and adulterated product that is not legal to sell in the United States.  She also paid a price premium due to Activia's purported status as a yogurt product.  The amount of the price premium can be reasonably quantified by an appropriate market study of the prices for comparable dairy products, or through a contingent valuation study, or through other means regularly employed by economic and valuation experts.

13.     Defendant The Dannon Company, Inc. ("Dannon") is a Delaware corporation with its principal place of business in White Plains, New York.  Dannon manufactures and sells a variety of consumer dairy products, including Activia, DanActive, Danimals, Dannon Fruit on the Bottom, Dannon Oikos, and Dannon Light & Fit.  Dannon's boasts on its corporate website that it

is the "[b]est-selling brand of yogurt worldwide" and "[o]ne of the top two yogurt producers in the U.S."

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

15.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiffs, as well as most members of the proposed Class, are citizens of states different from Dannon.  In 2009, Dannon sold $505 million worth of Activia.[1]

16.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District.  Plaintiffs Bailey, Sanders, and Fleisig are citizens of California, reside in this District, and purchased Activia in this District.  Moreover, Dannon distributed, advertised, and sold Activia, which is the subject of the present complaint, in this District.

## FACTUAL ALLEGATIONS

### How Regular Yogurt Is Made

17.     Yogurt is a dairy product that is produced by the fermentation of milk.  When certain types of food-grade bacteria are added to milk, they ferment the milk's lactose (milk sugar) to produce lactic acid.  The lactic acid acidifies the milk, which causes it to coagulate and thicken.  This acidity gives yogurt its tangy flavor.  Yogurt has a longer shelf life than milk, as it is inhospitable to destructive bacteria.

18.     Humans have consumed yogurt for thousands of years.  Anthropologists and historians believe yogurt originated in Central Asia during the Neolithic age, probably around 5,000 B.C. in Mesopotamia.  In this period, milk was stored in bags made from the stomach lining of domesticated animals, where naturally-occurring bacteria and digestive fluids resulted in

---

[1] Maureen Morrison, *Could FTC Settlement Derail Activia's Advertising?*, AD AGE, Dec. 17, 2010, http://adage.com/article/news/ftc-settlement-derail-activia-s-advertising/147746/.

fermentation.  The oldest confirmed writing of yogurt dates to the First Century, when Pliny the Elder of Rome wrote that the "barbarous nations" understood "how to thicken milk and form therefrom an acrid kind of milk with a pleasant flavour."  In the Eleventh and Twelfth Centuries, Genghis Khan sustained his armies on yogurt rations.  More recently, yogurt was popularized in the United States in the 1950's and 1960's, where health-conscious consumers learned of its nutritional benefits.

19.     Yogurt manufacturing today is simple and standardized.  First, the milk's fat content is reduced.  Second, the milk is heated and homogenized.  This process pasteurizes the milk to remove harmful bacteria, and denatures the protein to prevent the creation of clumps (curds).  Third, the milk is cooled to 109.4 to 114.8ºF and food-grade bacterial cultures are added, typically *Lactobacillus delbrueckii* subsp. *bulgaricus* or *Streptococcus salivarius* subsp. *thermophilus*.  Fourth, the temperature is maintained for three to four hours, and fermentation occurs.  The bacteria consume lactose and produce lactic acid, which thickens and acidifies the milk.  Finally, when the desired pH is achieved, the product is ready for packaging.

20.     Unfortunately, Dannon took a shortcut.  Instead of making yogurt by traditional methods, Activia is made with water and "fillers," including food starch, corn starch, gelatin, xanthan gum, and MPCs.  Dannon added these cheap filler materials to avoid the expense of making real yogurt.

**Dannon Represents That Activia Is "YOGURT," But It Adds Prohibited Ingredients To Cut Costs**

*Dannon Represents That Activia Is Yogurt*

21.     Dannon represents that Activia is "YOGURT," "LOWFAT YOGURT," and "NONFAT YOGURT."  This representation appears on the front of each package:



22.     Additionally, Dannon's website represents that Activia is yogurt.  In the product description page for Activia, Dannon writes: "Enrich your day with a delicious, creamy Activia lowfat yogurt.  Rich in flavor and made with our exclusive probiotic culture, Bifidus Regularis® (*Bifidobacterium lactis* DN-173 010), Activia will please your taste buds and your tummy by helping to regulate your digestive system."  *See* http://www.activia.us.com/products/activia.

23.     The FAQ on Dannon's website states that "Activia is a lowfat yogurt with 120 calories per 4 oz serving.  Activia Light is a nonfat yogurt with 70 calories per 4 oz serving."  *See* *http://www.activia.us.com/activia-benefits/faqs.*  The FAQ further states that, "Anyone can eat Activia!  Activia is for anyone who wants to enjoy a delicious yogurt or smoothie…."  *Id.*

24.     Activia is intentionally sold in the yogurt aisle, and Dannon suggests that consumers should "[l]ook for all of the delicious Activia varieties nationwide in the yogurt section of the dairy case at your favorite grocery store."  *Id.*

*Dannon Adds MPCs And Filler Materials To Activia, Thereby Reducing The Costs Of Production*

25.     Dannon adds water, food starch, corn starch, gelatin, xanthan gum, and MPCs to Activia:

26.     Dannon adds water, food starch, corn starch, gelatin, acacia gum, xanthan gum, inulin, and MPCs to Activia Light:



27.     Dannon adds water, food starch, corn starch, gelatin, xanthan gum, and MPCs to Activia Parfait:

**INGREDIENTS: MIXED BERRY LOWFAT YOGURT** [CULTURED GRADE A REDUCED FAT MILK, SUGAR, FRUCTOSE, STRAWBERRIES, BLUEBERRY PUREE, WATER, MODIFIED FOOD STARCH, CONTAINS LESS THAN 1% OF MILK PROTEIN CONCENTRATE, MODIFIED CORN STARCH, NATURAL FLAVOR, KOSHER GELATIN, CARMINE (FOR COLOR), AGAR AGAR, LACTIC ACID, CARRAGEENAN, CALCIUM LACTATE, SODIUM CITRATE, XANTHAN GUM, VITAMIN D3], **GRANOLA TOPPINGS** [ROLLED WHITE WHEAT FLAKES, DRIED CANE SYRUP, ROLLED OATS, BROWN RICE FLOUR, MOLASSES, WHEY, HONEY, PUFFED BROWN RICE, CONTAINS LESS THAN 1% OF OAT MEAL, CARAMEL COLOR, SALT, CORN STARCH, MIXED TOCOPHEROLS [VITAMIN E] AND ASCORBIC ACID [VITAMIN C] (TO MAINTAIN FRESHNESS), SUGAR, CINNAMON, MALT EXTRACT].

CONTAINS THE ACTIVE CULTURES *L.BULGARICUS, S.THERMOPHILUS* AND *BIFIDOBACTERIUM LACTIS DN 173-010 (BIFIDUS REGULARIS®)*
**CONTAINS MILK AND WHEAT**
**MANUFACTURED IN A PLANT PROCESSING SOY, PEANUTS AND TREE NUTS**

28.     Dannon adds water, food starch, corn starch, gelatin, inulin, wheat bran, and MPCs to Activia Fiber:



29.     Dannon adds water, food starch, corn starch, gelatin, guar gum, and MPCs to Activia 24 oz. Tubs:

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

**Nutrition Facts**

| Serving Size | 8oz (225g) about 3 | 4oz (113g) about 6 |
|---|---|---|
| Servings per container | | |
| **Amount Per Serving** | | |
| **Calories** | 230 | 120 |
| Calories from Fat | 35 | 20 |
| | % Daily Value* | % Daily Value* |
| **Total Fat** | 4g  **6%** | 2g  **3%** |
| Saturated Fat | 2.5g  **13%** | 1.5g  **8%** |
| *Trans* Fat | 0g | 0g |
| **Cholesterol** | 15mg  **5%** | 5mg  **2%** |
| **Sodium** | 115mg  **5%** | 60mg  **3%** |
| **Potassium** | 300mg  **9%** | 150mg  **4%** |
| **Total Carbohydrate** | 43g  **14%** | 22g  **7%** |
| Dietary Fiber | 0g  **0%** | 0g  **0%** |
| Sugars | 37g | 18g |
| **Protein** | 7g  **14%** | 3g  **6%** |

*Percent Daily Values are based on a 2,000 calorie diet. Your daily values may be higher or lower depending on your calorie needs.

| | Calories: | 2,000 | 2,500 |
|---|---|---|---|
| Total Fat | Less than | 65g | 80g |
| Sat Fat | Less than | 20g | 25g |
| Cholesterol | Less than | 300mg | 300mg |
| Sodium | Less than | 2,400mg | 2,400mg |
| Potassium | | 3,500mg | 3,500mg |
| Total Carbohydrate | | 300g | 375g |
| Dietary Fiber | | 25g | 30g |
| Protein | | 50g | 65g |

| | | |
|---|---|---|
| Vitamin A  0% | Vitamin A  0% |
| Vitamin C  0% | Vitamin C  0% |
| Calcium  30% | Calcium  15% |
| Iron  0% | Iron  0% |
| Vitamin D  25% | Vitamin D  15% |
| Riboflavin  25% | Riboflavin  15% |
| Phosphorus  20% | Phosphorus  10% |

**INGREDIENTS:** CULTURED GRADE A REDUCED FAT MILK, SUGAR, WATER, FRUCTOSE, MODIFIED FOOD STARCH, CONTAINS LESS THAN 1% OF MILK PROTEIN CONCENTRATE, MODIFIED CORN STARCH, NATURAL VANILLA FLAVOR, KOSHER GELATIN, AGAR AGAR, GUAR GUM, LACTIC ACID, CALCIUM LACTATE, VITAMIN D3, SODIUM CITRATE.

CONTAINS THE ACTIVE CULTURES *L.BULGARICUS, S.THERMOPHILUS* AND *BIFIDOBACTERIUM LACTIS DN-173-010*

17

18

19

20

  30. Food starch, corn starch, gelatin, inulin, and xanthan gum are inexpensive filler materials.  It is cheaper to add water and fillers than it is to use more milk.  Instead of making an authentic yogurt product, Dannon simply added water and fillers to increase Activia's thickness and protein content.

21

22

23

24

25

26

27

  31. MPCs, another filler material, are typically created as a byproduct of cheese manufacturing.  After separating the curds from the whey following fermentation, the resulting liquid was historically discarded.  In modern times, the liquid whey is passed through an extremely fine filter.  The filter strains water, minerals, and other organic materials but retains milk proteins, which are too large to pass through.  Any remaining liquid is fully evaporated from these proteins. The resulting product is a mostly flavorless protein powder.  It is called Milk Protein Concentrate if it contains whey protein and casein proteins in the same proportion as it appears in cow's milk

28

(about 20% and 80%, respectively).  However, MPCs are not necessarily made from cow's milk. Manufacturers may need to add extra casein protein to arrive at the correct proportions.  MPCs are often imported from foreign countries, including the Ukraine, India, China, Argentina, China, Poland, Australia, and New Zealand.  Many of these countries have lower food standards than the U.S.

32.    Dannon's conduct is not industry standard.  The majority of yogurt brands in the U.S. do not add water, MPCs, and filler materials.

33.    Dannon intentionally added water and fillers to shortchange consumers.  As discussed above, it is *not necessary* to add MPCs and filler materials to yogurt.  Most domestic manufacturers do not add MPCs, and there is no plausible reason why these ingredients are needed to make yogurt.

34.    By adding MPCs and fillers to its yogurt, Dannon deprives consumers of the benefit of their bargain.  When consumers purchase Activia, they expect yogurt.  But they do not get yogurt.  They get a misbranded product that contains filler material, violates federal law, violates FDA regulations, and is not legal to sell in the U.S.

35.    Furthermore, consumers are damaged by paying a price premium for a product that is supposedly yogurt.  The amount of the price premium can be reasonably quantified by an appropriate market study of the prices for comparable dairy products, or through a contingent valuation study, or through other means regularly employed by economic and valuation experts.

**Activia Is Misbranded Because Adding Water, MPCs, And Filler Materials Violates The FDA's "Standard Of Identity" For Yogurt**

*The FDCA And FDA Standards Of Identity*

36.    The Federal Food, Drug, and Cosmetic Act ("FDCA") gives the FDA authority to regulate food products.  Where "such action will promote honesty and fair dealing in the interest of consumers," the FDA may "promulgate regulations fixing and establishing for any food, under its common or usual name so far as practicable, a reasonable definition and standard of identity."  21 U.S.C. § 341.

37.     The FDA's Standards of Identity define a category of foods, and specifies which ingredients may be used.  The FDA has promulgated roughly 300 Standards of Identity in 20 categories of food.  *See generally* 21 C.F.R.  §§ 130-69.  This includes all types of dairy products, bakery products, frozen desserts, cereal flours, macaroni products, fruit pies, eggs, and margarine.  *Id.*

38.     Any food that fails to comply with the Standards of Identity is "misbranded" under the FDCA.  *See* 21 U.S.C. § 343 (g) (specifying that if a standard of identity exists, a food is "misbranded" unless "(1) it conforms to such definition and standard, and (2) its label bears the name of the food specified in the definition and standard").  Furthermore, food is misbranded under the FDCA if "its labeling is false or misleading in any particular."  21 U.S.C. § 343(a).

*The FDA's Standard Of Identity For Yogurt Is An Exhaustive List Of Ingredients Permitted In Yogurt*

39.     In 1981, the FDA promulgated Standards of Identity for yogurt, lowfat yogurt, and nonfat yogurt.  21 C.F.R. §§ 131.200, 131.203, 131.206.  They became effective on July 1, 1983.  46 Fed. Reg. 9924; 47 Fed. Reg. 41519.

40.     The Standards of Identity for yogurt, lowfat yogurt, and nonfat yogurt are similar.  They specify that, "Yogurt is the food produced by culturing one or more of the optional dairy ingredients specified in paragraph (c) of this section with a characterizing bacterial culture that contains the lactic acid-producing bacteria, *Lactobacillus bulgaricus* and *Streptococcus thermophilus*.  One or more of the other optional ingredients specified in paragraphs (b) and (d) of this section may also be added.  When one or more of the ingredients specified in paragraph (d)(1) of this section are used, they shall be included in the culturing process.  All ingredients used [must be] safe and suitable."  21 C.F.R. § 131.200(a).

41.     The "optional dairy ingredients" that may be cultured under paragraph (c) are, "Cream, milk, partially skimmed milk, or skim milk, used alone or in combination."  21 C.F.R. § 131.200(c).  Paragraph (b) permits the addition of vitamin A and D.  Paragraph (d) permits the addition of a number of assorted ingredients, including, "(1) Concentrated skim milk, nonfat dry

milk, buttermilk, whey, lactose, lactalbumins, lactoglobulins, or whey modified by partial or

complete removal of lactose and/or minerals.…  (2) Nutritive carbohydrate sweeteners.  Sugar

(sucrose), beet or cane; invert sugar (in paste or sirup form); brown sugar; refiner's sirup; molasses

(other than blackstrap); high fructose corn sirup; fructose; fructose sirup; maltose; maltose sirup,

dried maltose sirup; malt extract, dried malt extract; malt sirup, dried malt sirup; honey; maple

sugar.…  (3) Flavoring ingredients.  (4) Color additives.  (5) Stabilizers."  21 C.F.R. § 131.200(d).

42.     In totality, the Standard of Identity for yogurt is an *exclusive list* of ingredients that

may be added to yogurt.  If "yogurt" contains any ingredient not on that list, as a matter of federal

law it is <u>not</u> yogurt, and it is misbranded.  21 C.F.R. §§ 131.200, 131. 203, 131.206; 21 U.S.C. §

343 (a), (g).

*<u>The FDA's Standard Of Identity For Yogurt Prohibits The Addition Of Water, MPCs, And
Fillers</u>*

43.     The FDA's Standard of Identity for yogurt does not list water, food starch, corn

starch, xanthan gum, inulin, or MPCs in the list of permitted ingredients.  Therefore, they are

prohibited.

44.     In fact, the FDA has specifically banned the use of MPCs and a similar ingredient,

Whey Protein Concentrate ("WPCs").  *See* 74 Fed. Reg. 2443, 2452-53 (2009) ("[T]he current

standard makes no allowance for the use of whey protein concentrate as a basic ingredient in

yogurt."); *see also* Dec. 18, 2002 FDA Warning Letter to Kraft Foods North America Inc.,

http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/2002/ucm145363.htm (accessed

July 30, 2012) ("The use of milk protein concentrate in these products constitutes a violation of

Section 403(g)(1) of the Act because the products are represented as foods for which standards of

identity have been prescribed by regulation and the use of milk protein concentrate in these

products does not conform to the standards.").

45.     Dannon has knowledge that their conduct violates FDA regulations.  In 2003, a

trade organization called the National Yogurt Association ("NYA") proposed that the FDA change

its regulations to permit the addition of whey protein concentrate, a similar additive to MPCs.  *See*

Exh. F (policy statement by the National Milk Producers Federation, a competing trade organization, that summarizes and opposes the NYA's proposed changes).  However, the FDA ultimately rejected the NYA's proposal.  Of note, Dannon holds two of the five seats on the NYA's board of directors.[2]  Based on its position in the NYA, Dannon was surely aware that the FDA rejected its proposal rule to allow the use of whey protein concentrates.  But Dannon ignored the FDA's rules, and it continues to sell Activia with water, MPCs, and fillers.

**Activia Is Adulterated Because MPCs Are Not "Generally Recognized As Safe" By The FDA**

46.     Under the FDCA, food additives must be Generally Recognized As Safe ("GRAS") by the FDA.

47.     If the FDA has not made a GRAS determination, manufacturers may use the additive if and only if they conduct an internal self-determination and submit their evidence to the FDA, including the manufacturer's own scientific evidence.

48.     Any food containing an additive that has not followed these producers is adulterated under the FDCA, which defines food additives as "all substances … the intended use of which results or may reasonably be expected to result … in their becoming a component or food otherwise affecting the characteristic of food."  21 U.S.C. § 321(s).

49.     MPCs do not have GRAS status.  It is not found in the FDA's Database of Select Committee on GRAS Substances (SCOGS) Reviews.

50.     Because MPCs do not appear in the FDA's GRAS Notice Inventory, no manufacturer has conducted an internal self-determination of MPCs, nor has the FDA ever received a manufacturer's self-determination.  Furthermore, MPCs do not appear in the FDA's larger list of food additives, Everything Added to Food in the United States ("EAFUS").

51.     Because Activia contains unapproved additives, it is adulterated.  It violates the FDCA and applicable regulations thereunder.

---

[2] *See Member And Office Listing*, NATIONAL YOGURT ASSOCIATION, http://aboutyogurt.com/index.asp?bid=51.

## **CLASS ACTION ALLEGATIONS**

52.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased Activia (the "Class").  Excluded from the Class are persons who made such purchase for purpose of resale.

53.     Plaintiffs Bailey, Sanders, and Fleisig also seek to represent a subclass of all Class members who purchased Activia in California (the "California Subclass").

54.     Plaintiff Kaczmarek also seeks to represent a subclass of all Class members who purchased Activia in New Jersey (the "New Jersey Subclass").

55.     Plaintiff Long also seeks to represent a subclass of all Class members who purchased Activia in Florida (the "Florida Subclass").

56.     Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclasses number in the hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Dannon and third party retailers and vendors.

57.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Dannon warranted that Activia (i) was yogurt, (ii) was not misbranded, (iii) was not adulterated, and (iv) was legal for sale in the United States; whether Dannon breached those warranties; and whether Dannon committed statutory and common law fraud by doing so.

58.     The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs purchased Activia in reliance on the representations and warranties described above, and suffered a loss as a result of that purchase.

59.     Plaintiffs are an adequate representative of the Class and Subclasses because their interests do not conflict with the interests of the Class and Subclass members they seeks to

represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

60. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and Subclass members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Dannon's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Dannon's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>COUNT I</u>

**Breach Of Express Warranty**

61. Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

62. Plaintiffs bring this claim individually and on behalf of the members of the proposed Classagainst Dannon.

63. Dannon, as the designer, manufacturer, marketers, distributors, and/or sellers expressly warranted that Activia was fit for its intended purpose by representing that it (i) was yogurt, (ii) was not misbranded, (iii) was not adulterated, and (iv) was legal for sale in the United States.

64. In fact, Activia is not fit for such purposes because each of these express warranties is false. Particularly, Activia (i) is not yogurt, (ii) is misbranded, (iii) is adulterated, and (iv) is not legal for sale in the United States.

65.     As a direct and proximate cause of Dannon's breach of express warranty, Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased Activia on the same terms if the true facts were known concerning its manufacturing, ingredients, status as a yogurt product, and failure to comply with FDA regulations; (b) they paid a price premium for Activia due to its supposed status as yogurt; and (c) Activia did not have the quality, functionality, or value as promised.

66.     On July 10, 2012, prior to the filing of this Complaint, each Plaintiff served a notice letter on Dannon which complies in all respects with Cal. Com. Code § 2607, N.J.S.A. § 12A:2-607, and Fla. Stat. § 672.607.  Each Plaintiff sent a letter via certified mail, return receipt requested, advising Dannon that it was in violation of state warranty law and must correct, repair, replace or otherwise rectify the goods alleged to be in violation.  True and correct copies of Plaintiffs' notice letters are attached hereto as Exhibits A through E.

## COUNT II

### Breach Of Implied Warranty Of Merchantability

67.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

68.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Classagainst Dannon.

69.     Dannon as the designer, manufacturer, marketers, distributors, and/or sellers impliedly warranted that Activia was fit for its intended purpose in that it (i) was yogurt, (ii) was in fact yogurt, (iii) was not adulterated, and (iv) was legal for sale in the United States.

70.     Dannon breached the warranty implied in the contract for the sale of Activia because it could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because Activia (i) is not yogurt, (ii) is misbranded, (iii) is adulterated, and (iv) is not legal for sale in the United States.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Dannon to be merchantable.

71.     In reliance upon Dannon's skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased Activia as a yogurt product.

72.     Activia was not altered by Plaintiffs or Class members.

73.     Activia was defective when it left the exclusive control of Dannon.

74.     Dannon knew that Activia would be purchased and used without additional testing by Plaintiffs and Class members.

75.     Activia was defectively designed and unfit for its intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

76.     As a direct and proximate cause of Dannon's breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased Activia on the same terms if the true facts were known concerning its manufacturing, ingredients, status as a yogurt product, and failure to comply with FDA regulations; (b) they paid a price premium for Activia due to its supposed status as yogurt; and (c) Activia did not have the quality, functionality, or value as promised.

## COUNT III

### Breach Of Implied Warranty Of Fitness For A Particular Purpose

77.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

78.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Dannon.

79.     Dannon marketed, distributed, and/or sold Activia with implied warranties that it was fit for its intended purposes in that it (i) was yogurt, (ii) was not misbranded, (iii) was not adulterated, and (iv) was legal for sale in the United States.  At the time that Activia was sold, Dannon knew or had reason to know that Plaintiffs and Class members were relying on Dannon's skill and judgment to select or furnish a product that was suitable for sale as yogurt.

80.     In reliance upon Dannon's implied warranties, Plaintiffs and Class members purchased Activia because they believed that it was yogurt.

81.     Activia was not altered by Plaintiffs or Class members.

82.     As a direct and proximate cause of Dannon's breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased Activia on the same terms if the true facts were known concerning its manufacturing, ingredients, status as a yogurt product, and failure to comply with FDA regulations; (b) they paid a price premium for Activia due to its supposed status as yogurt; and (c) Activia did not have the quality, functionality, or value as promised.

## COUNT IV

### Unjust Enrichment

83.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

84.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Dannon.

85.     Plaintiffs and Class members conferred benefits on Dannon by purchasing Activia.

86.     Dannon has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' purchases of Activia.  Retention of those moneys under these circumstances is unjust and inequitable because Dannon misrepresented that Activia was yogurt, which caused injuries to Plaintiffs and Class members because they would not have purchased Activia if the true facts were known.

87.     Because Dannon's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class members is unjust and inequitable, Dannon must pay restitution to Plaintiffs and Class members for their unjust enrichment, as ordered by the Court.

88.     Because Dannon's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class members is unjust and inequitable, Dannon must pay restitution to Plaintiffs and Class members for their unjust enrichment, as ordered by the Court.

## COUNT V

### Violation Of California's Consumers Legal Remedies Act ("CLRA"),

### California Civil Code §§ 1750, *et seq.*

89.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

90.     Plaintiffs Bailey, Sanders, and Fleisig bring this claim individually and on behalf of the members of the proposed California Subclass against Dannon.

91.     CLRA § 1770(a)(2) prohibits "[m]isrepresenting the source, sponsorship, approval, or certification of goods or services."

92.     CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

93.     CLRA § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

94.     CLRA § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

95.     Dannon violated each of these provisions by misrepresenting that Activia (i) was yogurt, (ii) was not misbranded, (iii) was not adulterated, and (iv) was legal for sale in the United States.

96.     Plaintiffs Bailey, Sanders, Fleisig, and the California Subclass suffered injuries caused by Dannon because: (a) they would not have purchased Activia on the same terms if the true facts were known concerning its manufacturing, ingredients, status as a yogurt product, and failure to comply with FDA regulations; (b) they paid a price premium for Activia due to its supposed status as yogurt; and (c) Activia did not have the quality, functionality, or value as promised.

97.     On or about June 10, 2012, prior to filing this action, CLRA notice letters were served on Dannon which complies in all respects with California Civil Code § 1782(a).  Plaintiffs Bailey, Sanders, and Fleisig sent Dannon a letter via certified mail, return receipt requested, advising it that it is in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom.  True and correct copies of these letters are attached hereto as Exhibits A through C.

98.     Wherefore, Plaintiffs Bailey, Sanders, and Fleisig seek damages, restitution, and injunctive relief for this violation of the CLRA.

## COUNT VI

### Violation Of California's Unfair Competition Law ("UCL"),

### California Business & Professions Code §§ 17200, *et seq.*

99.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

100.    Plaintiffs Bailey, Sanders, and Fleisig bring this claim individually and on behalf of the members of the proposed California Subclass against Dannon.

101.    Dannon is subject to the Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

102.    Dannon's misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA as described herein; the FAL as described herein; Cal. Com. Code § 2607; N.J.S.A. § 12A:2-607; and Fla. Stat. § 672.607.

103.    Dannon's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that Dannon's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive and unscrupulous as the gravity of the conduct outweighs any alleged benefits.

104.     Dannon's conduct, described herein, violated the "fraudulent" prong of the UCL by making misrepresentations about Activia.

105.     Plaintiffs Bailey, Sanders, Fleisig, and the California Subclass lost money or property as a result of Dannon's UCL violations because: (a) they would not have purchased Activia on the same terms if the true facts were known concerning its manufacturing, ingredients, status as a yogurt product, and failure to comply with FDA regulations; (b) they paid a price premium for Activia due to its supposed status as yogurt; and (c) Activia did not have the quality, functionality, or value as promised.

<u>COUNT VII</u>

**Violation Of California's False Advertising Law ("FAL"),**

**Calif. Business & Professions Code §§17500, *et seq.***

106.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

107.     Plaintiffs bring this claim individually and on behalf of the members of the proposed California Subclass against Dannon.

108.      California's False Advertising Law, Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

109.      Dannon committed acts of false advertising, as defined by §17500, by misrepresenting that Activia (i) was yogurt, (ii) was not misbranded, (iii) was not adulterated, and (iv) was legal for sale in the United States.

110.     Dannon knew or should have known, through the exercise of reasonable care that their representations about Activia were untrue and misleading.

111.     Dannon's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

112.     Plaintiffs Bailey, Sanders, Fleisig, and the California Subclass lost money or property as a result of Dannon's FAL violations because: (a) they would not have purchased Activia on the same terms if the true facts were known concerning its manufacturing, ingredients, status as a yogurt product, and failure to comply with FDA regulations; (b) they paid a price premium for Activia due to its supposed status as yogurt; and (c) Activia did not have the quality, functionality, or value as promised.

## COUNT VIII

### Violation Of The New Jersey Consumer Fraud Act ("NJCFA")

### N.J.S.A. § 58:8-1, *et seq.*

113.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

114.     Plaintiff Kaczmarek brings this claim individually and on behalf of the members of the proposed New Jersey Subclass against Dannon.

115.     Dannon misrepresented that Activia (i) was yogurt, (ii) was not misbranded, (iii) was not adulterated, and (iv) was legal for sale in the United States.

116.     Plaintiff Kaczmarek and New Jersey Subclass members suffered an ascertainable loss caused by Dannon's misrepresentations because: (a) they would not have purchased Activia on the same terms if the true facts were known concerning its manufacturing, ingredients, status as a yogurt product, and failure to comply with FDA regulations; (b) they paid a price premium for Activia due to its supposed status as yogurt; and (c) Activia did not have the quality, functionality, or value as promised.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT IX

**Violation Of The Florida Deceptive And Unfair Trade Practices Act ("FDUTPA"),**

**Fla. Stat. §§ 501.201 *et seq.***

117.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

118.    Plaintiff Long brings this claim individually and on behalf of the members of the proposed Florida Subclass against Dannon.

119.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.* (the "Act").  The express purpose of the Act is to "protect the consuming public … from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §§ 501.202(2).

120.    Plaintiff Long and Florida Subclass members are "consumers" within the meaning of Fla. Stat. §§ 501.203(7).

121.    Dannon was engaged in "trade or commerce" as defined by Fla. Stat. §§ 501.203(8).

122.    The sale of Activia constituted "consumer transactions" within the scope of Fla. Stat. §§ 501.201 to 501.213.

123.    Fla. Stat. §§ 501.204(1) declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

124.    Dannon has violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.  Specifically, Dannon represented that Activia (i) was yogurt, (ii) was not misbranded, (iii) was not adulterated, and (iv) was legal for sale in the United States. In fact, each of those representations was false.

125.    Dannon's unfair and deceptive practices are likely to mislead -- and have misled -- Plaintiff Long and Florida Subclass members acting reasonably under the circumstances, and violates Fla. Stat. §§ 501.204.

126.    Dannon's conduct proximately caused the injuries to Plaintiff Long and the Florida Subclass.

127.    Plaintiff Long and the Florida Subclass have been aggrieved by Dannon's unfair and deceptive practices in that they paid for Activia believing it was yogurt, a product they would not have purchased had they known the true facts, specifically, that Activia (i) is not yogurt, (ii) is misbranded, (iii) is adulterated, and (iv) is illegal for sale in the United States.

128.    The damages suffered by Plaintiff Long and the Florida Subclass were directly and proximately caused by the deceptive, misleading and unfair practices of Dannon, as more fully described herein.

129.    Pursuant to Fla. Stat. §§ 501.211(1), Plaintiff Long and the Florida Subclass seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Dannon and for restitution and disgorgement.

130.    Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff Long and the Florida Subclass make claims for damages and attorneys' fees and costs.

<u>**COUNT X**</u>

**Negligent Misrepresentation**

131.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

132.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Dannon.

133.    As discussed above, Dannon represented that Activia was yogurt but failed to disclose that it (i) is not yogurt, (ii) is misbranded, (iii) is adulterated, and (iv) is not legal for sale in the United States.  Dannon had a duty to disclose this information.

134.    At the time Dannon made these representations, Dannon knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

135.    At an absolute minimum, Dannon negligently misrepresented and/or negligently omitted material facts about Activia.

136.    The negligent misrepresentations and omissions made by Dannon, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase Activia.

137.    Plaintiffs and Class members would not have purchased Activia if the true facts had been known.

138.    The negligent actions of Dannon caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT XI

### Fraud

139.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

140.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class against Dannon.

141.    As discussed above, Dannon provided Plaintiffs and Class members with false or misleading material information and failed to disclose material facts about Activia, including but not limited to the fact that it (i) is not yogurt, (ii) is misbranded, (iii) is adulterated, and (iv) is not legal for sale in the United States.  These misrepresentations and omissions were made with knowledge of their falsehood.

142.    The misrepresentations and omissions made by Dannon, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase Activia.

143.   The fraudulent actions of Dannon caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Dannon, as follows:

a.   For an order certifying the nationwide Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel to represent members of the Class and Subclasses;

b.   For an order declaring Dannon's conduct violates the statutes referenced herein;

c.   For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclasses on all counts asserted herein;

d.   For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For an order of restitution and all other forms of equitable monetary relief;

g.   For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  August 31, 2012

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____
L. Timothy Fisher

L. Timothy Fisher (State Bar No. 191626)
Sarah N. Westcot (State Bar No. 264916)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
          swestcot@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
369 Lexington Avenue, 10th Floor
New York, NY  10017
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiffs*

1

I, Steven Bailey, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place for trial under California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business in this District.

3.      While living in California, I purchased Dannon Activia for personal consumer use.  I read the label on Dannon Activia, and purchased it in reliance on the claims that I was purchasing (i) yogurt, (ii) that was not adulterated, and (iii) that was legal for sale in the United States.  I would not have purchased Dannon Activia had I known the true facts concerning its manufacturing, ingredients, status as a yogurt product, and failure to comply with FDA regulations.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on August __7__, 2012 at _Lake Forest_ California.

_____
STEVEN BAILEY

1       I, Vicki Fleisig, declare as follows:

2       1.     I am a plaintiff in this action and a citizen of the State of California. I have personal

3 knowledge of the facts stated herein and, if called as a witness, I could and would testify

4 competently thereto.

5       2.     The complaint filed in this action is filed in the proper place for trial under

6 California Civil Code Section 1780(d) in that Defendants conduct a substantial amount of business

7 in this District.

8       3.     While living in California, I purchased Dannon Activia for personal consumer use.

9 I read the label on Dannon Activia, and purchased it in reliance on the claims that I was purchasing

10 (i) yogurt, (ii) that was not adulterated, and (iii) that was legal for sale in the United States. I

11 would not have purchased Dannon Activia had I known the true facts concerning its

12 manufacturing, ingredients, status as a yogurt product, and failure to comply with FDA regulations.

13

14       I declare under the penalty of perjury under the laws of the State of California that the

15 foregoing is true and correct, executed on August __7__, 2012 at _Yorba Linda_, California.

16

17

18                        VICKI FLEISIG

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

# BURSOR & FISHER
P.A.

369 LEXINGTON AVENUE
10TH FLOOR
NEW YORK, NY 10017
www.bursor.com

SCOTT A. BURSOR
Tel: 212-989-9113
Fax: 212-989-9163
scott@bursor.com

July 10, 2012

*Via Certified Mail - Return Receipt Requested*

The Dannon Company, Inc.
100 Hillside Ave.
White Plains, NY 10603

Re:     *Notice Letter Pursuant to California Civil Code § 1782 and Cal. Com. Code § 2607.*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by The Dannon Company, Inc. ("Dannon") pursuant to California Civil Code § 1782 and Cal. Com. Code § 2607(3)(A), on behalf of our client, Steven Bailey, and all other persons similarly situated.

This notice concerns Activia, which Dannon markets as "a creamy, delicious lowfat yogurt." Packages of Activia are affixed with the label "LOWFAT YOGURT." However, Activia contains Milk Protein Concentrate ("MPC") and added water, which are prohibited by the Standards of Identity for yogurt products promulgated by the U.S. Food and Drug Administration ("FDA"). *See* 21 C.F.R. §§ 131.200, 131.203. Therefore, Activia is not yogurt.

Mr. Bailey purchased Activia in California. Dannon expressly represented to him that Activia was yogurt. Dannon breached that express warranty because Activia is not yogurt. *See* Cal. Com. Code § 2313.

By misrepresenting, mislabeling, and selling Activia as yogurt, Dannon has violated numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(2), (5), (7), and (9).

We hereby demand that Dannon immediately (1) cease and desist from continuing to label and sell Dannon Activia as "yogurt," (2) issue an immediate recall of any Activia product bearing false labels representing the product is yogurt; and (3) make full restitution to all purchasers of Activia of all purchase money obtained from sales thereof.

We also demand that Dannon preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning the ingredients, formula, and manufacturing process for Activia;

2.      All communications with the FDA concerning Activia or MPC's;

3.      All documents concerning the advertisement, marketing and/or sale of Activia; and

4.      All communications with customers concerning complaints or comments concerning Activia.

If Dannon contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Very truly yours,

Scott A. Bursor
scott@bursor.com

**EXHIBIT B**

# BURSOR & FISHER
### P.A.

369 LEXINGTON AVENUE
10TH FLOOR
NEW YORK, NY 10017
www.bursor.com

SCOTT A. BURSOR
Tel: 212-989-9113
Fax: 212-989-9163
scott@bursor.com

July 10, 2012

***Via Certified Mail - Return Receipt Requested***

The Dannon Company, Inc.
100 Hillside Ave.
White Plains, NY 10603

Re:     *Notice Letter Pursuant to California Civil Code § 1782 and Cal. Com. Code § 2607.*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by The Dannon Company, Inc. ("Dannon") pursuant to California Civil Code § 1782 and Cal. Com. Code § 2607(3)(A), on behalf of our client, Robert Sanders, and all other persons similarly situated.

This notice concerns Activia, which Dannon markets as "a creamy, delicious lowfat yogurt." Packages of Activia are affixed with the label "LOWFAT YOGURT." However, Activia contains Milk Protein Concentrate ("MPC") and added water, which are prohibited by the Standards of Identity for yogurt products promulgated by the U.S. Food and Drug Administration ("FDA"). *See* 21 C.F.R. §§ 131.200, 131.203. Therefore, Activia is not yogurt.

Mr. Sanders purchased Activia in California. Dannon expressly represented to him that Activia was yogurt. Dannon breached that express warranty because Activia is not yogurt. *See* Cal. Com. Code § 2313.

By misrepresenting, mislabeling, and selling Activia as yogurt, Dannon has violated numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(2), (5), (7), and (9).

We hereby demand that Dannon immediately (1) cease and desist from continuing to label and sell Dannon Activia as "yogurt," (2) issue an immediate recall of any Activia product bearing false labels representing the product is yogurt; and (3) make full restitution to all purchasers of Activia of all purchase money obtained from sales thereof.

We also demand that Dannon preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning the ingredients, formula, and manufacturing process for Activia;

2.      All communications with the FDA concerning Activia or MPC's;

3.      All documents concerning the advertisement, marketing and/or sale of Activia; and

4.      All communications with customers concerning complaints or comments concerning Activia.

If Dannon contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Very truly yours,

Scott A. Bursor
scott@bursor.com

**EXHIBIT C**

# BURSOR & FISHER
P.A.

369 LEXINGTON AVENUE
10ᵀᴴ FLOOR
NEW YORK, NY 10017
www.bursor.com

SCOTT A. BURSOR
Tel: 212-989-9113
Fax: 212-989-9163
scott@bursor.com

July 10, 2012

_**Via Certified Mail - Return Receipt Requested**_

The Dannon Company, Inc.
100 Hillside Ave.
White Plains, NY 10603

Re:     _Notice Letter Pursuant to California Civil Code § 1782 and Cal. Com. Code § 2607._

To Whom It May Concern:

    This letter serves as a preliminary notice and demand for corrective action by The Dannon Company, Inc. ("Dannon") pursuant to California Civil Code § 1782 and Cal. Com. Code § 2607(3)(A), on behalf of our client, Vicki Fleisig, and all other persons similarly situated.

    This notice concerns Activia, which Dannon markets as "a creamy, delicious lowfat yogurt." Packages of Activia are affixed with the label "LOWFAT YOGURT." However, Activia contains Milk Protein Concentrate ("MPC") and added water, which are prohibited by the Standards of Identity for yogurt products promulgated by the U.S. Food and Drug Administration ("FDA"). _See_ 21 C.F.R. §§ 131.200, 131.203. Therefore, Activia is not yogurt.

    Ms. Fleisig purchased Activia from an Albertson's supermarket in Yorba Linda, California. Dannon expressly represented to her that Activia was yogurt. Dannon breached that express warranty because Activia is not yogurt. _See_ Cal. Com. Code § 2313.

    By misrepresenting, mislabeling, and selling Activia as yogurt, Dannon has violated numerous provisions of California law including the Consumers Legal Remedies Act, Civil Code § 1770, including but not limited to subsections (a)(2), (5), (7), and (9).

    We hereby demand that Dannon immediately (1) cease and desist from continuing to label and sell Dannon Activia as "yogurt," (2) issue an immediate recall of any Activia product bearing false labels representing the product is yogurt; and (3) make full restitution to all purchasers of Activia of all purchase money obtained from sales thereof.

    We also demand that Dannon preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning the ingredients, formula, and manufacturing process for Activia;

2.      All communications with the FDA concerning Activia or MPC's;

3.      All documents concerning the advertisement, marketing and/or sale of Activia; and

4.      All communications with customers concerning complaints or comments concerning Activia.

If Dannon contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Very truly yours,

Scott A. Bursor
scott@bursor.com

**EXHIBIT D**

# BURSOR & FISHER
P.A.

369 LEXINGTON AVENUE
10TH FLOOR
NEW YORK, NY 10017
www.bursor.com

SCOTT A. BURSOR
Tel: 212-989-9113
Fax: 212-989-9163
scott@bursor.com

July 10, 2012

*__Via Certified Mail - Return Receipt Requested__*

The Dannon Company, Inc.
100 Hillside Ave.
White Plains, NY 10603

Re:    *Notice Letter Pursuant to N.J.S.A. § 12A:2-607.*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by The Dannon Company, Inc. ("Dannon") pursuant to N.J.S.A. § 12A:2-607(3)(a), on behalf of our client, Jayme Kaczmarek, and all other persons similarly situated.

This notice concerns Activia, which Dannon markets as "a creamy, delicious lowfat yogurt." Packages of Activia are affixed with the label "LOWFAT YOGURT." However, Activia contains Milk Protein Concentrate ("MPC") and added water, which are prohibited by the Standards of Identity for yogurt products promulgated by the U.S. Food and Drug Administration ("FDA"). *See* 21 C.F.R. §§ 131.200, 131.203. Therefore, Activia is not yogurt.

Ms. Kaczmarek purchased Activia in New Jersey. Dannon expressly represented to her that Activia was yogurt. Dannon breached that express warranty because Activia is not yogurt. *See* N.J.S.A. § 12A:2-313.

We hereby demand that Dannon immediately (1) cease and desist from continuing to label and sell Dannon Activia as "yogurt," (2) issue an immediate recall of any Activia product bearing false labels representing the product is yogurt; and (3) make full restitution to all purchasers of Activia of all purchase money obtained from sales thereof.

We also demand that Dannon preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.    All documents concerning the ingredients, formula, and manufacturing process for Activia;

2.      All communications with the FDA concerning Activia or MPC's;

3.      All documents concerning the advertisement, marketing and/or sale of Activia; and

4.      All communications with customers concerning complaints or comments concerning Activia.

If Dannon contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Very truly yours,

Scott A. Bursor
scott@bursor.com

**EXHIBIT E**

# BURSOR & FISHER

P.A.

369 LEXINGTON AVENUE
10TH FLOOR
NEW YORK, NY 10017
www.bursor.com

SCOTT A. BURSOR
Tel: 212-989-9113
Fax: 212-989-9163
scott@bursor.com

July 10, 2012

*Via Certified Mail - Return Receipt Requested*

The Dannon Company, Inc.
100 Hillside Ave.
White Plains, NY 10603

Re:     *Notice Letter Pursuant to Fla. Stat. § 672.607.*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by The Dannon Company, Inc. ("Dannon") pursuant to Fla. Stat. § 672.607(3)(a), on behalf of our client, Cynthia Long, and all other persons similarly situated.

This notice concerns Activia, which Dannon markets as "a creamy, delicious lowfat yogurt." Packages of Activia are affixed with the label "LOWFAT YOGURT." However, Activia contains Milk Protein Concentrate ("MPC") and added water, which are prohibited by the Standards of Identity for yogurt products promulgated by the U.S. Food and Drug Administration ("FDA"). *See* 21 C.F.R. §§ 131.200, 131.203. Therefore, Activia is not yogurt.

Ms. Long purchased three packages of Activia at a Publix supermarket store in Sunrise, Florida. Ms. Long paid $2.00 per package. Dannon expressly represented to her that Activia was yogurt. Dannon breached that express warranty because Activia is not yogurt. *See* Fla. Stat. § 672.313.

We hereby demand that Dannon immediately (1) cease and desist from continuing to label and sell Dannon Activia as "yogurt," (2) issue an immediate recall of any Activia product bearing false labels representing the product is yogurt; and (3) make full restitution to all purchasers of Activia of all purchase money obtained from sales thereof.

We also demand that Dannon preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.      All documents concerning the ingredients, formula, and manufacturing process for Activia;

BURSOR&FISHER
P.A.

2.      All communications with the FDA concerning Activia or MPC's;

3.      All documents concerning the advertisement, marketing and/or sale of Activia; and

4.      All communications with customers concerning complaints or comments concerning Activia.

If Dannon contends that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Very truly yours,

Scott A. Bursor
scott@bursor.com

**EXHIBIT F**



# National Milk Producers Federation

6549   '03 OCT -8 P4:57

National Milk Producers Federation • 2101 Wilson Blvd., Arlington, VA 22201 • 703-243-6111  FAX 703-841-9328

Agri-Mark, Inc.

Arkansas Dairy
Cooperative Association

Associated Milk
Producers, Inc.

California Dairies, Inc.

Cass-Clay
Creamery, Inc.

Continental Dairy
Products, Inc.

Cooperative Milk
Producers Assn.

Country Classic
Dairies, Inc.

Dairy Farmers
of America, Inc.

Dairymen's Marketing
Cooperative, Inc.

Dairylea Cooperative Inc.

Ellsworth Cooperative
Creamery

Farmers Cooperative
Creamery

First District
Association

Foremost Farms USA

Land O'Lakes, Inc.

Lone Star Milk
Producers, Inc.

Manitowoc Milk
Producers Coop.

MD & VA Milk
Producers Cooperative
Association, Inc.

Michigan Milk
Producers Assn.

Mid-West Dairymen's
Company

Milwaukee Cooperative
Milk Producers

Niagara Milk
Cooperative, Inc.

Northwest Dairy
Association

Prairie Farms
Dairy, Inc.

St. Albans Cooperative
Creamery, Inc.

Scioto County Co-op
Milk Producers' Assn.

Select Milk
Producers, Inc.

Southeast Milk, Inc.

Swiss Valley Farms, Co.

Tillamook County
Creamery Assn.

United Dairymen
of Arizona

Upstate Farms
Cooperative Inc.

September 29, 2003

Division of Dockets Management (HFA-305)
Food and Drug Administration
5630 Fishers Lane, rm. 1061
Rockville, MD  20852

RE:  Advance notice of proposed rulemaking; Petition to revoke standards for lowfat yogurt and nonfat yogurt and to amend standards for yogurt and cultured milk (Docket No. 00P-0685)

Dear Sir or Madam:

The following comments are being submitted on behalf of the National Milk Producers Federation (NMPF).  NMPF, headquartered in Arlington, VA, develops and carries out policies that advance the well-being of U.S. dairy producers and the cooperatives they collectively own.  The members of NMPF's 34 cooperatives produce the majority of the U.S. milk supply, making NMPF the voice of 60,000 dairy producers on Capitol Hill and with government agencies.

NMPF's interest in this matter lies in the fact that many of our organization's members supply the raw ingredients used to manufacture yogurt and some of NMPF's cooperative members manufacture yogurt directly.  In addition, NMPF is very interested in ensuring that any changes to the standards of identity for yogurt products do not have an adverse impact on consumers or consumers' perceptions of the nutritious and wholesome nature of these or any other dairy products.  For these reasons, NMPF does not agree with several of the changes proposed by the National Yogurt Association (NYA) because they will have an adverse impact on both dairy producers and consumers throughout the U.S.

For example, the proposal to maintain all three categories of yogurt (nonfat yogurt, lowfat yogurt, and yogurt) in one standard does not appear to be logical or consistent with current consumer understanding of the labeling of standardized foods.  Virtually all standardized food products must follow the regulations passed as a result of the Food Labeling and Education Act of 1990.  These regulations include requirements for standardized foods in which

OOP-0685                                    C10



a nutrient content claim descriptor is used. In 1995, FDA made a change to the standards of identity for milk products in this regard and FDA chose to maintain one standard of identity and allow for the use of nutrient content claims for reduced fat, lowfat, and nonfat milks. NMPF does not see why yogurt standards of identity should be treated differently than any other food product in the U.S.

The rationale for seeking this special exception for yogurt appears to be related to a desire by the member companies of NYA to not fortify lower fat yogurt products with vitamin A. When FDA established the labeling regulations pertaining to the use of nutrient content claims in conjunction with standardized foods, one of the key components was to ensure that consumers did not suffer a decrease in beneficial nutrients when they sought lower fat versions of foods. Because of this, FDA established the requirement of nutritional equivalency for these products as it relates to nutrients lost as fat is removed. NMPF fails to see why yogurt should be exempt from this requirement. NMPF is not aware of any special processing or technological rationale that would explain why yogurt manufacturers should not or can not add vitamin A to the lower fat versions of the products. In fact, vitamin addition will occur prior to processing, just as it is currently done for fluid milk products. In addition, yogurt manufacturers are currently adding other nutrients or ingredients, such as inulin, to yogurt on a voluntary basis for marketing and nutritional reasons. NMPF believes Vitamin A addition will not be difficult to accomplish.

Regarding the addition of ingredients after culturing, NMPF does not believe that optional milk-derived ingredients should be added after pasteurization and culturing. Dairy products readily support the growth of microorganisms, including pathogenic microorganisms. NMPF considers it to be a good manufacturing process for manufacturers to ensure that all dairy ingredients are pasteurized just prior to any additional processing. If previously pasteurized ingredients are permitted to be added to yogurt after culturing, NMPF believes that the potential for unintentional contamination exists. While it may not happen every time, NMPF believes that the risk is too great. In order to ensure that consumers are adequately protected, FDA should require that all dairy ingredients be pasteurized immediately prior to any additional processing step, such as culturing.

Regarding the use of dairy ingredients, NMPF does not agree with the addition of whey protein concentrate (WPC) as a standard dairy ingredient. Currently, the yogurt standard of identity allows for cream, milk, partially skimmed milk, or skim milk, used alone or in combination. This current list of ingredients has resulted in a product of consistent quality - made from fresh, high quality ingredients - that consumers have come to expect. The use of WPC may result in an inferior quality product. In fact, NYA acknowledges the potential for inferiority by placing a limit on the level of WPC that can be used. NMPF

believes that consumers do not expect that yogurt will contain more whey proteins than are naturally present in milk. While there are many very good sources of WPC available for use, the potential for using lower quality ingredients also exists. One of the paramount purposes of standards of identity is to ensure honesty and fair dealing in the interest of consumers. Allowing for lower quality ingredients will not achieve this goal. Consumers expect yogurt to be made from fresh ingredients.

NMPF does not agree with the proposal to allow for any milk-derived ingredient that provides a technical or functional purpose. The list of optional ingredients that may be added to yogurt under the current standard of identity has an important provision that the ratio of protein to total nonfat solids and the protein efficiency ratio of all protein present must not be decreased. This provision is not included in the NYA petition and NMPF believes that this omission may result in inferior quality products reaching consumers. The intent of allowing for optional ingredients above the minimum required by the standard dairy ingredients is to allow for increasing the solids content of the product while still using a definite set of well-defined ingredients. NMPF feels that this intent must be maintained. To allow for any additional milk-derived ingredient to be used is too open for a standard of identity. The uncertain phrase "provides a technical or functional purpose" is open to much interpretation and will not ensure that consumers receive the high quality product that they have come to expect when they purchase yogurt. NYA does not provide any examples of what cannot be accomplished technologically with the current list of ingredients or what limitations the current ingredients impose. In the absence of such information, it appears that the true rationale for allowing more ingredients is to allow for a lower cost of manufacturing. Unfortunately, this often results in a lower quality finished product, as well. In addition, NMPF is uncertain as to who will enforce this requirement for providing a technical or functional purpose. State Regulatory Agencies and FDA do not have the resources to enforce such loose provisions in a standard of identity.

The request to amend the standard of identity for cultured milk contains many of the same concerns to NMPF in the ingredient area. In addition to adding the term "fermented milk" as a labeling option for cultured milk products, NYA seeks to expand the use of whey protein concentrate and other milk-derived dairy ingredients. NMPF has the same concerns about this change as we do with the changes suggested to the yogurt standard of identity.

Overall, NMPF has many concerns about the changes proposed by NYA. Many of them appear to be merely seeking an allowance to potentially use cheaper ingredients in the manufacture of yogurt. NMPF believes such actions will have a negative impact on the use of milk in yogurt making and will also negatively impact dairy producers across the U.S. Of equal importance is the fact that the potential for confusing labeling inconsistencies and for inferior

quality products will not promote honesty and fair dealing in the interest of consumers.

Thank you for the opportunity to provide these comments to the advance notice of proposed rulemaking.  Please feel free to contact us if you have any questions or would like additional information.

Sincerely,

Robert D. Byrne Jr.

Robert D. Byrne, Ph.D.
Vice President of Regulatory Affairs

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| STEVEN BAILEY, ~~and~~ ROBERT SANDERS, VICKY FLEISIG, JAYME KACZMAREK, and CYNTHIA LONG, individually and on behalf of all others similarly situated, <br> *Plaintiff(s)* <br> v. <br> THE DANNON COMPANY, INC. <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) Civil Action No. SACV12-1438-PA (AGRx) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

> The Dannon Company, Inc.
> 100 Hillside Ave.
> White Plains, NY  10603

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> L. Timothy Fisher
> Bursor & Fisher, P.A.
> 1990 N. California Blvd., Suite 940
> Walnut Creek, CA  94596
> Telephone:  (925) 300-4455

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date:  AUG 3 1 2012

MARILYN DAVIS
*Signature of Clerk or Deputy Clerk*



AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

&#10113; I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

&#10113; I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

&#10113; I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

&#10113; I returned the summons unexecuted because _____ ; or

&#10113; Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc:

**FAX FILING**

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
#### CIVIL COVER SHEET

| | |
|---|---|
| **I (a) PLAINTIFFS** (Check box if you are representing yourself ☐) STEVEN BAILEY, ROBERT SANDERS, VICKI FLEISIG, JAYME KACZMAREK and CYNTHIA LONG, individually and on behalf of all others similarly situated | **DEFENDANTS** THE DANNON COMPANY, INC |
| **(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) L. Timothy Fisher (SBN 191626), Bursor & Fisher, P.A. 1990 N. California Blvd., Suite 940, Walnut Creek, CA 94596 Telephone: (925) 300-4455 | **Attorneys** (If Known) |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☑ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes ☐ No   ☑ **MONEY DEMANDED IN COMPLAINT: $** Monetary/Equitable Relief

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Section 1331

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number: _SA CV12-1438_

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

VIII(a). IDENTICAL CASES: Has this action been previously filed in this court and dismissed, remanded or closed?  ☑ No   ☐ Yes
If yes, list case number(s): _____

VIII(b). RELATED CASES: Have any cases been previously filed in this court that are related to the present case?  ☑ No   ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
   ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
   ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
   ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

IX. VENUE: (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District: * | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Steven Bailey - Orange<br>Robert Sanders - Los Angeles<br>Vicki Fleisig - Orange | Jayme Kaczmarek - New Jersey<br>Cynthia Long - Florida |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District: * | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | The Dannon Company, Inc.<br>New York |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
   Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District: * | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange<br>Los Angeles | New Jersey<br>Florida |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date  August 31, 2012

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969 (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability.  (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Alicia G. Rosenberg.

The case number on all documents filed with the Court should read as follows:

## SACV12- 1438 PA (AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

═══════════════════════════════════════════════════

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [x] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.